CUTRER, Judge.
This appeal arises from a garnishment proceeding. G.C. Hunter and Vernida Hunter (Hunters) filed these proceedings against David Deville, Sr. (Deville) as employer of his son, David Deville, Jr. (David). The Hunters were seeking to garnish the wages of David to satisfy a judgment of $50,000.00 arising out of the death of the Hunters’ son, the victim of a homicide in which David was involved.
In a hearing of Hunters’ rule to traverse Deville’s answers to interrogatories[1] the trial court granted the Hunters’ request for garnishment. Deville appeals the trial court’s ruling contending the trial court *858 erred in failing to find that, under LSA-R.S. 13:3925,[2] David’s prior debt to Deville should have been satisfied before the Hunters’ garnishment would become effective. Finding the defendants’ contention without merit, we affirm.
The sole issue of this appeal is whether the medical expenses, attorney’s fees and other expenses, most of which were incurred by David while incarcerated, should be considered as an indebtedness of David to Deville.[3]
FACTS
On September 9, 1976, the Hunters were awarded $50,000.00 in a death action against David. David was incarcerated from June 1977 until March 1980, at which time he was released on parole. While incarcerated, David underwent a back operation at Ochsner Foundation Hospital. Upon release David returned to his family’s home on Deville’s plantation. David’s wife and family had been residing in Deville’s plantation since David’s incarceration. David and his family continued to make this their home on the plantation.
The back operation left David disabled. David’s disability prevents him from bending at the waist, lifting heavy items and performing any strenuous labor.
Realizing his disability would prevent him from securing most employment opportunities David chose to work on Deville’s plantation. David did light work and received $600.00 a month in wages.
While his physical situation is distressing David’s lifestyle is fortunate. David and his, family live in a house provided by the plantation. All utilities and insurance are provided by the plantation. David drives a truck provided by the plantation for both personal and work-related business. David’s wife drives a car provided by David’s mother. Fuel and insurance for both vehicles are also provided by the plantation. David’s children receive a private education provided by David’s mother. David’s fortunate lifestyle is the result of a very warm, close Deville family that is sensitive to David’s special needs.
In answer to the interrogatories propounded by the Hunters, Deville alleged *859 that David was indebted to him in the amount of $6,027.58 and that David was paying this debt at the rate of $50.00 per month. The trial court rendered reasons for judgment in favor of the Hunters.
Counsel for Deville contends that the trial judge erred in granting the judgment. It is contended that the trial court granted the Hunters’ garnishment on the ground that their judgment pre-dated the expenses paid by Deville. Counsel for Deville points out that, under LSA-R.S. 13:3925, the recognition of the employee’s indebtedness to the employer does not depend on the indebtedness pre-dating the judgment.
It is unclear as to the basis for the trial court judgment.
Deville’s counsel bases his contention upon the following brief statement in the reasons for judgment:
“It is my view that it would be unjust to deny recovery to the Hunters in the circumstances at hand considering when they obtained their judgment and when the bulk of these debts were incurred."
On the other hand, it appears that the trial judge concluded that the expenses paid by Deville on behalf of David constituted gratuities and not an indebtedness under LSA-R.S. 13:3925. This portion of the trial judge’s reasons provides as follows:

“It is my view that the expenditure of moneys for auto insurance and medical expenses while David Deville, Jr. was in prison and the expenditure of moneys for taxes for ‘earnings’ that he was taxed for while a prisoner should not be considered expenses that the employer may now charge against current income in preference and priority to the garnishment.”

We are inclined to conclude that the trial court rendered judgment for the reasons immediately above, but it is unnecessary to decide which reasons he used as we agree with the trial court’s ultimate conclusion. We find that the garnishment was properly granted on the ground that the expenses paid by Deville on behalf of his son, David, did not create an indebtedness within the purview of LSA-R.S. 13:3925. We have concluded that Deville’s payments were gratuities and not loans for the reasons set forth below.
LOANS OR GRATUITIES
In reviewing the record we do not find that the evidence supports the existence of an indebtedness between Deville and David. Deville admitted at the hearing that he did not start withholding any money from David’s payroll check until after he was served with the garnishment proceeding. In fact, Patsy Huffman (Deville’s daughter and plantation bookkeeper) testified that Deville did not tell her to start withholding money from David’s check until March 14, 1981.
Patsy admitted that she was told by De-ville in March 1981, to make out the $50.00 deduction checks and to pre-date them to show that the payments began the first part of January 1981. She pre-dated the checks as instructed by Deville to cover the withholding for January and February 1981. Thereafter, the $50.00 was withheld from each bimonthly pay cheek. We must note that the answers to the interrogatories were filed in March 1981.
Deville testified that he didn’t know of any written evidence of the indebtedness such as a note. David did not know of the existence of a note. Patsy, the bookkeeper, also was not able to say that the indebtedness was represented by any writing.
This case is unusual in that the relationship before us is not only employer-employee but also that of father-son. The record does not indicate that the father and son considered the payments to be loans at the time of payments. It was only after the garnishment was filed that the payments were categorized as loans. The deductions, which began when the interrogatories were filed in March 1981, were made retroactive to January 1981. The indebtedness was not reduced to writing in the form of a note. These factors seriously weaken the credibility of the testimony of Deville and David that these were loans instead of gratuities from an affluent father to a son in need.
*860 Under the unusual circumstances of this case, we find that the expenses paid by Deville were gratuities and not loans to David. The trial court correctly granted the Hunters’ request for garnishment.
For these reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed to Deville, the appellant.
AFFIRMED.

. The Hunters contended that in addition to the $600.00 per month salary, David’s income should include the use of a house, car, truck, insurance payments and other items furnished to David by Deville. The trial court refused to include these items as income and no appeal was taken from this ruling by the Hunters.

. LSA-R.S. 13:3925 provides:
“If the employer answering such interrogatories should plead that the employee is indebted unto the employer, the employer shall make a full and complete disclosure of the status of such account, showing the time that the debt was incurred, the exact amount of such debt, the credits applicable thereto, the manner in which this debt is being liquidated, and all other facts in connection there with and pertinent thereto, whereupon the court may hear evidence affecting such issue and may render a judgment ordering the payment to the employer of the non-exempt portion of such salary, wage or commission at a specified rate in the same manner as if the employer were a judgment creditor having a prior garnishment. The court likewise shall fix the date upon which the claim should be considered liquidated and the date the garnishment therein sued out shall take effect. It is the intention of this Section that the employer should be treated as one holding a prior garnishment, but limiting the time within which such indebtedness should be considered paid in full in order that other garnishments may attach, the priority of such employer being limited to that time.”

. The expenses of David paid by Deville were as follows:
Date Party Purpose Amount
2-28-78 Pinson-Calhoun Insurance Auto Insurance $ 168.00
5- 2-78 Pinson-Calhoun Insurance Auto Insurance 149.40
9-11-79 Ochsner Med. Found. Hospital Medical Bills 757.58
11-13-79 Ochsner Med. Found. Hospital Medical Bills 327.72
9-11-79 Brent House (Ochsner) Medical Bills 298.92
8- 2-79 Gravel, Roy & Bumes Attorney’s Fees 277.55
10- 3-79 Gravel, Roy & Bumes Attorney’s Fees 1,000.00
11-21-79 Gravel, Roy & Bumes Attorney’s Fees 1,500.00
8- 5-80 ' Gravel, Roy & Bumes Attorney’s Fees 125.00
4-15-80 Internal Revenue Service Taxes 1,382.28
8-21-80 Internal Revenue Service Taxes 41.13
$6,027.58